The Court delivered the following decree :
The case made by the pleadings, in this cause, is an important one, and I have given it the best consideration in my power.
There can be no doubt where the justice of the case lies, whilst the distinctions of property, and of right and wrong in relation to it, subsist among men. The funds in the hands of the deceased Mr. M’Leod, wore unquestionably the property of the complainant, and came there by a high act of confidence. In justice he and his representatives were bound to pay it.
But it is alleged, by'the defendant, that whatever may have been the moral obligation, the complainants were not entitled to recover from the defendant; because the money in question arose from a shipment of negroes made in October, 1799, from the coast of Africa, to Mr. M’Leod,' in Charleston, at a time when the importation of negroes, into this state, was made illegal by the acts of Assembly then in force, prohibiting such importation, and confiscating the negroes ; and that courts of justice will not enforce illegal contracts, nor aid parties in recovering under them.
The position laid down by the defendant’s counsel is certainly true in general, that courts of justice will not enforce illegal contracts, nor. assist parties in recovering under them. The cases of insurance on illegal voyages, and other examples, have been cited and relied upon in support of this doctrine. But all the c,ases cited are where attempts are made to recover under the illegal contract itself, as in the instance of insurances, where the suit is brought to recover against the insurer on the illegal policy.
*132 The counsel endeavored to give application to this set of cases, by insisting that this was a contract, whereby Mr. M’Leod undertook, by receiving the negroes, to sell them and be accountable for the proceeds ; and that this contract being, contrary to law, was, void and could not jje enforced in our courts.
I cannot, however, think that these decisions have any application to this case. This is a mere agency. It was so understood by the parties in the course of the trade whilst it w7as legal. But suppose it to be a contract, what is it ? That defendant would receive a cargo of ne-groes, and sell them, and receive the money for the complainant. All this he has done: it is completed. But the defendant says, I will not pay you the money which I have received on your account, because the whole transaction is illegal, as the law prohibited the importation of negroes. The complainant hies this bill to compel the payment. The suit is not bro’t to recover a cent, out'of the defendant’s pocket, of his own money j it is to make him pay money which he has received as the agent, and for the use, of the complainant. It would be monstrous that the defendant should be permitted to keep the money ; and the decided cases, following the principles of abstract justice, shew that where an illegal transaction has taken place, the agent, who has received the money on the part of the principal, shall not shelter himself from the payment of it to his principal under the pretence of the illegality of the original transaction. I will not say that there may not be cases, where the transaction may involve so much moral guilt, that courts of justice would not suffer themselves to he polluted with them directly or indirectly. B ut I do not think that this is one of those cases \ or that it differs from the decided cases on this point. The principal one is that of Ten-nent and Elliott, in 1 Bos. & Puller, p. 3. There it was solemnly decided, that Elliott, a broker, who had rcceiv-ed money to the use of Tennent, his employer, on an illegal .policy of insurance, which the • underwriters paid, ■’-t.’-'sis. 'wmsiring, shall not be allowed to set up the *133 illegality of the contract as a defence in an action bro’t by Tennent, for money had and received. This was also decided in the case of Farmer vs. Russel and another, 1 Bos. & Puller, p. 298.
I think these cases were rightly decided, and are applicable to the case now under consideration, thinking*, as I do, that the defendant was a mere agent, and that this is not an attempt to enforce an illegal contract under the sanction of the Court; but a suit brought for the recovery of money received by defendant, for the corn-plainant, though founded on a transaction originally illegal.
If, however, the counsel for the defendant should he doubtful on this point, they would do well to carry it up to a higher tribunal, for it is a very important point, and one of some difficulty. It may not he considered as so distinct a case of mere and exclusive agency as the cases' referred to.
There is, however, another ground in this cause which I think is very conclusive for the complainant. In Til-ley’s letter of the 5th October, 1799, to Mr. M’Lcod, lie expressly states, « Should itbe necessary for your slaves to proceed to the Havana, you will picase act with mine as your own.”
Without speculating or conjecturing whether Tilley knew of the prohibition of the importation of negroes into this state, or was ignorant of it, these words are susceptible of a plain and reasonable interpretation, which will protect the complainant from the effects of tin; illegality attributed to the act of importation. The words arc “should it be necessary for your .slaves to proceed to the Havana, you will please act with mina as your own.” What necessity could exist, so strong, for the negroes sent by the Phoebe not being brought into Charleston, and for their proceeding to the Havana, as the prohibition of the importation by the law of Carolina ? It "was conclusive ; and upon the existence of any necessity, the negroes were to he sent to the Havana. Surely it is not straining the words to say, that the wri *134 ter meant to leave it to the knowledge and judgment of Mr. M’Leod, residing on the spot and better informed, "co decide whether it was proper to introduce those ne-groes into Carolina, or not. Mr. M’Leod did decide to introduce them, though contrary to law. And shall he pe permitted to say my decision was contrary to the law of the land, and being so contrary, you shall not recover the money, though I have sold the negroes and received the money ? It is impossible ! Justice forbids it ; and as her humble minister I cannot sanction it.
But it is argued, that if this letter exempts the complainant from a participation of the guilt of violating the law of the state, that still the act of Congress, which was passed in 1794, prohibited citizens of the United States, or persons resident therein, from fitting out vessels for the African trade, to supply foreign countries j and that the shipment of those negroes on board an American vessel, fitted out at Charleston, with a view to the transportation of slaves to the Havana, would bring the case within that law.
It does not appear to me that foreigners, residing out of the United States, acting as this complainant has done, could come within the provisions and scope of that act. But if they did, still the original question recurs, can the defendant iprotect himself, under such a plea, from paying money he has received as an agent to the complainant ? and I adhere to the opinion already given on that point.
It was also contended by the defendant’s counsel, that oven if the complainant could have recovered at law in an action for money had and received, yet wanting the assistance of this Court for a discovery, this Court would not assist him in such a case.
I confess I cannot see the ground of this doctrine. It is but of late years that the action for money had and received has had the extent and operation given to it which it now has and it is likened to a bill in equity, from the introduction of equitable doctrines through that channel into the courts of law. If therefore the *135 objection to the relief in such cases could he valid in this court it must have operated at law* We have seen/, that it does not; and I should be inclined to say, a for-j tiori not in this Court. 1
It has been objected that it does not appear to the Court that the negroes were not seized and forfeited, or that the purchasers did not refuse to pay. In other words, that it does not appear that the defendant has received the money.
I consider this argument as not belonging to thiss part of the case. When the plea is overruled and the defendant ordered to account, then these topics will be open to defendant and he may avail himself of them as far as they may be founded on fact.
The complainant’s counsel dwelt with much severity on the ungracious nature of this defence ; knd if Mr. M’Leod had lived and had set up the defence, I should have certainly agreed with complainant’s counsel, that it was a very ungracious, not to say an atrocious one.__L_ But I agree with the counsel for the administrator that ho is far less censurable for resorting to it. Creditors and heirs might have blamed him, and might even have attempted to make him liable for not using what they might deem a legal defence.
It is ordered and decreed that the plea be overruled, and that the defendant do account for the nett amount sales of the negroes, taking credit for the sums already paid on account of complainant.
There was no appeal from this decree.